IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS NOVEMBER 21, 2003

## TINKER-WATKINS SAND & GRAVEL, INC. v. MICHAEL W. PARSONS

**Direct Appeal from the Circuit Court for Decatur County**
**No. 2680      C. Creed McGinley, Judge**

_____

**No. W2003-02048-COA-R3-CV - Filed March 31, 2004**

_____

This case involves a claim for payment from Defendant for goods and services provided by Plaintiff to Defendant under an oral contract. Originally, the claim was brought in the General Sessions Court for Decatur County. Defendant first challenged the venue of Decatur County, which was rejected by General Sessions Court. Defendant appealed the judgment of the General Sessions Court to the Circuit Court, which also denied Defendant's motion to dismiss for improper venue and awarded Plaintiff the amount claimed under the terms of the contract. Defendant appealed to this Court and we affirm.

**Tenn. R. App. P. 3.; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Michael W. Parsons, *pro se*, Memphis, TN

Bradford D. Box, Jackson, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Michael Parsons ("Parsons" or "Defendant") placed an order with Tinker Watkins Sand and Gravel, Inc. ("Tinker" or "Plaintiff"), a company with its offices in Decatur County, for the delivery of a load of 33c gravel for Parsons' driveway in Braden, Tennessee, on November 1, 2001. In return, Defendant was to pay Plaintiff the sum of $317.31 for the gravel and delivery. Plaintiff delivered a load of gravel to the Defendant's specified site in Braden on the date, and before the time, specified in the terms of the verbal contract. However, when Plaintiff's delivery truck arrived, Defendant was dissatisfied with the quantity delivered and decided to cancel his order at that point, contending that the quantity of gravel was less than what he had ordered. Defendant also indicated to the Plaintiff's

truck driver that the driver was supposed to spread the gravel over Defendant's driveway. The driver refused to spread the load of gravel and, as a result, the driver and Defendant decided to call James Tillman ("Tillman"), a representative for Tinker. Tillman spoke with Defendant and the truck driver and, after this conversation, the driver proceeded to spread the load of gravel in piles on Defendant's driveway. After the driver left Defendant's site, Defendant rented equipment and utilized labor to spread the load of gravel even further.

Plaintiff subsequently filed a civil warrant in the Decatur County General Sessions Court, claiming that Defendant owed Plaintiff the sum of $317.31, which represented the amount due from the delivery of the gravel to Defendant's driveway. Defendant filed a motion to dismiss on the basis of improper venue but the lower court denied this motion and awarded Plaintiff the sum due from the contract. Defendant appealed this decision to the Circuit Court of Decatur County and again filed a motion to dismiss for improper venue. The Circuit Court denied Defendant's motion to dismiss and, after a hearing, awarded Plaintiff the amount due on the contract. Defendant now appeals to this Court and presents the following issues for our review:

I.    The trial court erred when it denied Defendant's motion to dismiss based on improper venue;
II.   The trial court erred when it found that Plaintiff had performed under the contract; and
III.  The trial court erred when it refused to find Plaintiff's actions deceptive and unfair in violation of the Tennessee Consumer Protection Act.

For the following reasons, we affirm the decision of the trial court.

## Standard of Review

When a trial court sits without a jury, we review its findings of fact *de novo* upon the record with a presumption of correctness for those findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). However, when reviewing questions of law, our review is *de novo* with no presumption of correctness attached to the trial court's conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)). An original question of venue is a question of law and not a question of fact. *The Resource Company, Inc. v. Bristol Mem'l Hosp.*, No. 01-A-01-9412-CH-00569, 1995 Tenn. App. LEXIS 489, at *5 (Tenn. Ct. App. July 19, 1995).

## Venue

Defendant first argues that the trial court erred when it refused to dismiss Plaintiff's claim for improper venue. Specifically, Defendant contends that venue would be proper only in Shelby County or Tipton County, but not Decatur County. Tennessee law provides that "[i]n all civil actions of a transitory nature, unless venue is otherwise expressly provided for, the action may be brought in the county where the cause of action arose or in the county where the defendant resides or is

found." Tenn. Code Ann. § 20-4-101(a) (1994). In this instance, Plaintiff filed its claim against Defendant in Decatur County. Because Defendant does not reside, nor was he found, in Decatur County and venue was not provided for in the verbal contract, the only manner in which venue may be proper in Decatur County is if such county was "where the cause of action arose."

Tennessee courts have stated that "where the breach is a failure to pay money due, the debtor should seek the creditor." *Insituform of North America, Inc. v. Miller Insituform, Inc.*, 695 S.W.2d 198, 200 (Tenn. Ct. App. 1985). "In such cases the default and breach consist of the failure to pay the money and the cause of action accrues where the default occurred, which would necessarily be in the county where the creditor resides." *Id.* (quoting *Mendez v. George Hunt, Inc.*, 191 So. 2d 480, 481 (Fla. Dist. Ct. App. 1966)). In *Insituform*, the court held that venue was proper in the county of the creditor's residence. *Id.* at 199. The critical facts in that case were: (1) the claim was for the collection of a debt in a specific amount; (2) the materials sold to defendant were priced F.O.B. Memphis, which was plaintiff's residence; (3) all notices were to be given to plaintiff at its offices in Memphis, and (4) the terms of the contract specified that all payments were to be made at plaintiff's residence. *Id.* at 200-01.

Since the decision in *Insituform*, a number of cases have narrowed this rule. In *The Resource Co. v. Bristol Mem'l Hosp.*, 1995 Tenn. App. LEXIS 489 (Tenn. Ct. App. July 19, 1995), the Middle Section of this Court distinguished the facts of that case with the circumstances in *Insituform*. Specifically, the *Resource* court noted that the circumstances of *Insituform*–the presence of a liquidated debt, the fact that the materials were sold F.O.B. Memphis, and an undisputed affidavit that payments on the account were due in Shelby County–were absent in that case. *Resource*, 1995 Tenn. App. LEXIS 489, at *4-5. For that reason, the *Resource* court declined to adopt a rule that payment in all actions rooted in a contract were due at the creditor's residence. *Id.* at *5.

In *Jonesboro Drywall & Plaster Co. v. Charlie O. Kirby*, No. 03A01-9508-CH-00276, 1995 Tenn. App. LEXIS 756 (Tenn. Ct. App. Nov. 28, 1995), the court noted that the contract was signed in a different county than the creditor's residence, the work specified in the contract took place in a different county than the creditor's residence, and the materials used to fulfill the contract were purchased in a different county than the creditor's residence, unlike the circumstances in *Insituform*. *Jonesboro Drywall*, 1995 Tenn. App. LEXIS 756, at *5. In addition, the plaintiff in that case, rather than suing for a liquidated debt, sought "damages for consequential expenses incurred by plaintiff in subcontracting with another party to complete the work, reimbursement for materials provided to defendant which were lost or destroyed, and reimbursement for plaintiff's own expenses in completing the work." *Id.* at *1-2. Therefore, the court held that the county of plaintiff's principal place of business was an improper venue. *Id.* at *6.

Finally, this Court, in *TPC Facility Delivery Group, LLC v. James H. Lindsey, Jr.*, No. M2002-01909-COA-R3-CV, 2004 Tenn. App. LEXIS 76 (Tenn. Ct. App. Jan. 30, 2004), again distinguished the facts of that case with the circumstances of *Insituform*. In *TPC Facility*, the court noted that the contract in that case failed to state where payments were to be made, the complaint did not seek a specific amount but rather sought an unspecified amount of damages, there was no

requirement that all notices were to be given to the creditor in the creditor's county, and the materials sold were not priced F.O.B. the creditor's county. *TPC Facility*, 2004 Tenn. App. LEXIS 76, at *13-14. Instead, the court noted that the contract was negotiated in a different county than the creditor's residence, the contract was silent regarding where payments would be made, performance of the contract would largely occur in a different county than the creditor's residence, and finally, the initial payment of $10,000 was made in a different county than the creditor's residence. *Id*. at *15. For these reasons, the court held that venue did not lie in the county of the creditor as it did in *Insituform*. *Id*. at *16.

While the instant case is similar to *Resource*, *Jonesboro Drywall*, and *TPC Facility* in that there is no evidence that the contract specified a place for payment, it is distinguishable from these cases and more analogous to *Insituform* because it involves a claim for the collection of a debt in a specific amount. In addition, we note that, in *Mendez v. George Hunt, Inc.*, 191 So. 2d 480 (Fla. Dist. Ct. App. 1966), on which the *Insituform* court relied, the Florida court, though addressing a contract that was silent on where payments were to be made, stated that "plaintiff here would be on firm ground and within the auspices of the stated rule if he had completed all of the work contractually prescribed, leaving due to him the balance of the contract price" rather than an unliquidated sum of loss of profits that was subject to proof. *Mendez*, 191 So. 2d at 481-82; *see also TPC Facility*, 2004 Tenn. App. LEXIS 76, at *13-14 (stating that "*[w]hile finding the complaint stated a cause of action to collect a debt would necessarily require that venue be proper in the county of the creditor*, this court has declined to adopt a rule saying as a matter of law that payment in all actions based on contract is due at the creditor's residence" (emphasis ours)). Because the gravamen of Plaintiff's action is the collection of a debt in a specific amount, we hold that the cause of action in this case arose out of Plaintiff's county and, therefore, the trial court did not err when it determined that Decatur County was a proper venue.

### Performance Under Contract

Next, Defendant argues that the trial court erred when it found that a contract existed between the parties and Plaintiff had properly tendered performance under that contract. Specifically, Defendant contends that Plaintiff failed to deliver a full load of 33c gravel and spread it on Defendant's driveway. Tennessee courts have long recognized the validity of oral contracts such as the one in this case. *Computer Shoppe, Inc. v. State of Tenn.*, 780 S.W.2d 729, 735 (Tenn. Ct. App. 1989) (citing *Am. Lead Pencil Co. v. Nashville, Chattanooga & St. Louis Ry.*, 134 S.W. 613, 615 (Tenn. 1910); *Johnson v. Cent. Nat'l Ins. Co.*, 356 S.W.2d 277, 281 (Tenn. 1962)). In this case, the evidence in the record establishes that a valid contract was formed between the parties for the delivery of 33c gravel to Defendant's driveway in return for the sum of $317.31. Given the scant condition of the record, we cannot say that the trial court erred when it determined that Plaintiff fulfilled its obligation under the contract and, therefore, was entitled to the payment of $317.31 from Defendant. Therefore, we affirm the findings of the trial court that a contract existed and that Plaintiff properly performed under that contract.

-4-

**Tennessee Consumer Protection Act**

Finally, Defendant argues that the trial court erred when it did not find that Plaintiff's actions were in violation of the Tennessee Consumer Protection Act. For support, Defendant cites one of the purposes of the Tennessee Consumer Protection Act which states that the statute's provisions shall be liberally construed to promote the policy of "protect[ing] consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state." Tenn. Code Ann. § 47-18-102(2) (2001). However, Defendant fails to direct this Court to any of the provisions of the Tennessee Consumer Protection Act, and after reviewing the record and Tenn. Code Ann. § 47-18-104, we are unable to hold that the trial court erred when it did not find that Plaintiff's actions were unfair or deceptive. Therefore, we affirm the decision of the trial court.

**Conclusion**

For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to Appellant, Michael W. Parsons, and his surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE