IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2011 Session

**ALMETA ELLIS, AS THE ADMINISTRATRIX OF THE ESTATE OF
JONAH ELLIS, AND THE ESTATE OF JONAH ELLIS, INDIVIDUALLY
v.
MINDER MUSIC LIMITED, LONNIE SIMMONS AND ROBERT LOUIS
WHITFIELD**

**Appeal from the Chancery Court of Shelby County
No. CH-08-2250-2     Arnold B. Goldin, Chancellor**

**No. W2010-01023-COA-R3-CV - Filed August 31, 2011**

This appeal concerns venue in an action to recover royalties. The plaintiff songwriter resided in Shelby County, Tennessee. The plaintiff filed the instant lawsuit in Shelby County against the defendant music company to recover past-due royalties, asserting that he was the sole author of three musical compositions. The defendant music company, domiciled in the United Kingdom, filed a motion to dismiss based on, *inter alia*, improper venue. The trial court held that venue was improper and granted the motion to dismiss. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed,
and Remanded.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Samuel F. Miller, Bryan W. Jones, & Laura P. Merritt, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Nashville, Tennessee, for Plaintiffs/Appellants Almeta Ellis, as the Administratrix of the Estate of Jonah Ellis and the Estate of Jonah Ellis, Individually.

Byron K. Lindberg, Hall, Booth, Smith & Slover, P.C., Nashville, Tennessee, for Defendant/Appellee Minder Music Limited.[1]

---

[1]Defendant/Appellees Lonnie Simmons and Robert Louis Whitfield did not appear for this appeal.

## MEMORANDUM OPINION[2]

### FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellant Jonah Ellis ("Ellis")[3] was a songwriter and music teacher in Memphis, Shelby County, Tennessee. Ellis authored a number of songs, including "Do Something," "You're My Song," and "You and I," which were recorded by various artists.

In the 1970s and 1980s, Ellis associated with Defendant/Appellee Lonnie Simmons ("Simmons") and his music publishing companies. In July 1980, Ellis assigned the copyright on "You're My Song" to an entity owned by Mr. Simmons. The assignment agreement, executed in California, acknowledged that Ellis was the sole composer of that song. A subsequent letter from Simmons's attorney stated that, inadvertently, only 50% of the writer's royalty for "You're My Song" was credited to Ellis, but acknowledged that Ellis should have been credited with 100%. In 1982, Ellis registered the songs "You and I" and "You're My Song" with Broadcast Music, Inc. ("BMI"), listing himself as the sole writer of both songs.

During the 1980s, Ellis and Simmons engaged in protracted litigation in California. In 1983, Ellis and Simmons resolved the dispute with a settlement agreement, assigning the copyright of "Do Something," "You and I," and "You're My Song" to an entity owned by Simmons. The settlement agreement did not address authorship rights of the songs.

Later in 1994, the entity owned by Simmons assigned the copyrights on "Do Something," "You're My Song," and "You and I" to Defendant/Appellee Minder Music Limited ("Minder"). After that, Minder began paying royalties to Ellis on all three songs. Minder, however, did not pay Ellis 100% write royalties on the songs. On "You and I" and "You're My Song," Ellis was paid 50% royalties, and on "Do Something," Ellis received 33-1/3%.

---

[2]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. R. App. P. 10.

[3]Ellis filed the lawsuit that is the subject of this appeal. Ellis died before the trial court entered its final judgment. A suggestion of death was filed in the trial court, but Ellis's estate was not substituted at that point. This Court remanded the case to the trial court for substitution of the estate, and considered the appeal after substitution.

In 2005, Ellis filed a lawsuit against Minder and Defendant/Appellee Robert Louis Whitfield in Davidson County, Tennessee. The case was dismissed for failure to join an indispensable party and improper venue. After that, Minder withheld payment of Ellis's royalties, purportedly to reimburse Minder for its legal fees on the Davidson County lawsuit.

On December 5, 2008, proceeding *pro se*, Ellis filed the instant lawsuit, essentially identical to the Davidson County lawsuit, against the defendants Minder, Simmons, and Whitfield, in the Chancery Court of Shelby County, Tennessee. At the time, Ellis resided in Memphis and Shelby County. Minder is a British corporation, located in the United Kingdom. At the time the Shelby County complaint was filed, Simmons was a resident of California, and Whitfield was incarcerated in Texas.

Ellis's complaint was styled as an action for breach of contract and declaratory relief.[4] The complaint asserted that, since 1994, Minder had failed to pay Ellis his rightful 100% royalty on the songs "You and I," "You're My Song" and "Do Something," but instead paid him a 50% royalty on the first two and a 33-1/3% royalty on the third. The Shelby County complaint also asserted that, after dismissal of the Davidson County lawsuit, Minder had failed to pay Ellis any royalties at all. Ellis claimed that this was a breach of contract. The complaint stated the amount of royalties Minder had withheld as of February 2008, but noted that the damages continued to accrue because Minder continued to wrongfully withhold payment of Ellis's royalties. The complaint also asserted that Minder was unjustly enriched, and sought a declaratory judgment that Ellis was the sole author of the songs at issue.[5]

In response to Ellis's complaint, Minder filed a motion to dismiss, alleging, *inter alia*, improper venue and insufficiency of service of process. Minder stated that its principal place of business is in London, England, that it does not "maintain an office or agent in Tennessee for the furtherance of business activities," and that it cannot be "found" in Tennessee for purposes of venue.[6] Minder claimed that Ellis's cause of action did not arise in Tennessee

---

[4]The heading "Breach of Contract and Declaratory Relief" was handwritten on the *pro se* complaint.

[5]The complaint stated that Whitfield claimed to have co-authored "Do Something," and Simmons claimed to have co-authored "You're My Song" and "You and I."

[6]Minder filed a supporting affidavit from its president and principal owner, John Fogarty. In the affidavit, Fogarty recites that Minder Music Limited is a United Kingdom company. He also recites that a separate California entity, Minder Music, Inc., is wholly owned by Minder Music Limited. The affidavit says that the California entity, Minder Music, Inc., "never entered into any agreements with Jonah Ellis." The affidavit does not address whether Minder Music Limited ever entered into any agreement with Ellis, and does not address whether Minder Music, Inc. engages in business in Tennessee.

because the agreements assigning the copyright to the songs were executed in California.[7] Additionally, Minder asserted that Simmons was a necessary or indispensable party and that he was not served properly.

In opposition to Minder's motion to dismiss, Ellis asserted that, if Simmons had not been properly served, then Minder's motion to dismiss was not yet ripe for adjudication. Ellis also maintained that venue in Shelby County was proper because Ellis's complaint was essentially for recovery of a debt, *i.e.*, Minder's failure to pay Ellis full royalties for the songs at issue, and because the royalties were to be paid to Ellis in Shelby County.

On August 21, 2009, the trial court denied Minder's motion to dismiss on the basis that the motion was not ripe for adjudication.

In January 2010, Minder filed a second motion to dismiss. This second motion focused on improper venue, asserting that Ellis's cause of action did not arise in Tennessee and that Minder does not reside in Tennessee. Minder maintained it was domiciled in the United Kingdom, and that venue was not proper in any court in Tennessee. Minder asserted that the gravamen of Ellis's lawsuit was for breach of contract and unjust enrichment, and averred that "all agreements assigning copyright in the musical works 'You and I,' 'You're My Song,' and 'Do Something' to [Simmons's company] were signed and entered into in California." Therefore, Minder argued, Ellis's cause of action did not arise in Tennessee.

In response to Minder's second motion to dismiss, Ellis again asserted that venue was proper in Shelby County. Even though the *pro se* complaint was styled as an action for breach of contract, Ellis insisted that it was in reality an action to collect a debt, which arises in the county in which payment of the debt is due. Ellis noted that Minder's basic payment obligation, *i.e.*, its obligation to pay Ellis royalties, was not disputed, only the amount of the payment was disputed. Therefore, Ellis argued, his lawsuit to collect royalties should be treated the same as an action to collect an undisputed debt due under a contract. In the alternative, if his lawsuit were not considered to be an action for collection of a debt, Ellis argued, venue was still proper in Shelby County. Ellis contended that, in determining where the cause of action arose, the trial court should look to the "focal point" of the contract. As the only performance required of Minder by the contract was the payment of royalties to Ellis, the "focal point" of the contract is where Mr. Ellis resides, *i.e.*, Shelby County.

---

[7]Minder relied on the 1980 agreement, executed in California, assigning "You're My Song" to Simmons's company. Minder also relied on the 1983 settlement agreement on the California attorney's letterhead, which does not indicate where it was executed.

The trial court held a hearing on Minder's motion on March 5, 2010. The Statement of the Evidence[8] summarized the parties' arguments at the hearing:

> Minder argued that it is domiciled in the United Kingdom and thus venue is not proper in any court in Tennessee. It further asserted that the cause of action did not arise in Tennessee because the copyright assignment agreements at issue were entered into in California, not Tennessee. Minder additionally argued that the claim was not analogous to an action for a collection of a debt and thus venue was not proper where the debt was to be paid.
>
> At the hearing, [Ellis] argued that the action was a transitory action under Tenn. Code Ann.§ 20-4-101(a). As such, venue is proper (1) where the action arose or (2) where any defendant resides or is found. [Ellis] argued that the suit was an action to collect royalties due under a copyright assignment contract that were to be paid to [Ellis] in Shelby County, Tennessee where Appellant resided. Thus, [Ellis] contended that the action "arose" in Shelby County and venue was proper.

The trial court held:

> . . . that the gravamen of [Ellis's] cause of action sounds in contract for unliquidated damages subject to proof and not as a collection of a debt in a specific amount. Accordingly, the [C]ourt finds, pursuant to Tenn. Code Ann. § 20-4-1, the cause of action did not arise in Tennessee and the Defendant Minder Music Limited does not reside in and cannot be found in Tennessee.

In the meantime, after Minder filed its second motion to dismiss but prior to the trial court's ruling on it, Ellis passed away. On April 14, 2010, counsel for Ellis filed a suggestion of death with the trial court. Almeta Ellis, as Executor of the Estate of Jonah Ellis, filed a motion to substitute herself as Administratrix of the Estate of Jonah Ellis and the Estate of Jonah Ellis individually, in place of Jonah Ellis as the plaintiff in the litigation. The motion was later granted.[9] The Estate of Jonah Ellis ("Estate") now appeals.

---

[8]The Statement of the Evidence submitted by the Estate was not specifically approved by the trial court, but Minder filed no objection to it and the trial court did not act on it within the requisite time period, so under Tennessee's Rules of Appellate Procedure, it is deemed approved. *See* Tenn. R. App. P. 24(f).

[9]The trial court initially did not rule on the motion to substitute, presumably because the notice of appeal had been filed. Accordingly, after oral argument in the appeal, this Court remanded the cause to the trial court

(continued...)

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

The sole issue on appeal for our review is whether the Shelby County trial court erred in dismissing the case for improper venue. The determination of whether venue is proper is a question of law, reviewed *de novo* with no presumption of correctness. ***Lanius v. Nashville Elec. Serv.***, 181 S.W.3d 661, 663 (Tenn. 2005).

**ANALYSIS**

The parties agree that venue in this case is governed by Tenn. Code Ann. § 20-4-101(a), which addresses transitory actions.[10] The statute states:

> In all civil actions of a transitory nature, unless venue is expressly provided
> for, the action may be brought *in the county where the cause of action arose*
> or in the county where the defendant resides or is found.

T.C.A. § 20-4-101(a) (2009) (emphasis added). It is undisputed that, in this case, there is no contractual provision expressly providing for venue, and that defendant Minder does not "reside" in Shelby County and cannot be "found" in Shelby County for venue purposes. Therefore, the issue in this appeal is whether Ellis's cause of action "arose" in Shelby County, for purposes of determining venue. Both the Estate and Minder cite caselaw in support of their arguments on whether Ellis's cause of action arose in Shelby County.

The Estate acknowledges that the Shelby County complaint is styled as a claim for breach of contract. Nevertheless, it notes that the only "breach" is Minder's failure to pay money, *i.e.*, royalties. It asserts: "At its core, Ellis's cause of action against Minder is about one thing only: whether Minder has properly calculated the royalties to which Ellis is entitled."

---

[9](...continued)
for the limited purpose of substituting the parties. The Court then considered this appeal after the trial court entered an order substituting the Estate as the Plaintiff/Appellant.

[10]In ***Nickell, Inc. v. Psillas***, No. M2004-02975-COA-R3-CV, 2006 WL 1865018 (Tenn. Ct. App. June 30, 2006), the court explained:

> Actions are either local or transitory in nature, and the subject matter of the action
> determines its classification. Transitory actions are those that could have risen anywhere.
> A transitory action is one for which the injury occurred to a subject not having an
> immovable location. An action based on contract is a transitory action.

*Id.* at *2 n.3 (citations omitted).

The Estate contends that the gravamen of the complaint is that Minder did not properly determine that Ellis was the sole author of the three disputed songs and that Minder improperly withheld royalties from Ellis to offset legal fees. Accordingly, the Estate claims that this lawsuit is essentially an action to collect a debt. It cites *Insituform of North America, Inc. v. Miller Insituform, Inc.,* 695 S.W.2d 198, 200 (Tenn. Ct. App. 1985) for the proposition that an action for the collection of debt arises in the county in which payment of the debt is due, which generally is the county where the creditor resides unless the contract between the parties states otherwise. Here, the Estate argues, the cause of action arose in Shelby County because Ellis resided in Shelby County and the required royalty payments were to be made to him in Shelby County. The Estate claims that *Tinker-Watkins Sand & Gravel, Inc. v. Parsons*, No. W2003-02048-COA-R3-CV, 2004 WL 689880, at *1 (Tenn. Ct. App. Mar. 31, 2004), indicates that, even if the amount of money due is disputed, the action is still considered as one for collection of a debt.

In the alternative, even if Ellis's lawsuit is not an action for collection of a debt, the Estate contends that the focus of Minder's contractual obligations remained in Shelby County, and therefore venue in Shelby County is proper. It cites *Jonesboro Drywall & Plaster Co, Inc. v. Kirby*, No. 03A01-9508-CH-00276, 1995 WL 697901, at *2 (Tenn. Ct. App. Nov. 28, 1995), for the proposition that "for actions to collect money due under a contract that are not considered debt collection actions, the Court must look to the 'focal point' of the contract to determine where the action arises." The Estate argues that the only performance of any contractual obligation was Minder's required payment of royalties to Ellis in Shelby County and, therefore, the "focal point" of the contract between Ellis and Minder was in Shelby County. Either way, the Estate maintains, the trial court erred in dismissing the complaint for improper venue.

In response, Minder asserts that the trial court correctly found that Ellis's lawsuit was an action for unliquidated damages subject to proof, not an action for collection of a debt in a specific amount. Among the contested issues are whether Ellis was the sole author of the three songs, and what percentage of royalties, if any, Ellis is owed. Minder points out that the demand in the complaint sought an unspecified amount of damages, rather than a specific amount of damages. On that basis, Minder distinguishes *Tinker-Watkins Sand & Gravel Inc.*, because it involved the collection of a debt in a specified amount. *See Tinker-Watkins*, 2004 WL 689880, at *1. Minder again asserts that any "breach occurred where the contract [between Ellis and Simmons's company] was entered into, in California."

In response to the Estate's alternative argument, based on the same agreements that Minder claims were executed in California, Minder asserts that the contractual obligations at issue were focused in California, not Shelby County. Minder also asserts that the Estate placed no

evidence in the record of an agreement to make royalty payments in Shelby County, or how long Ellis resided in Shelby County.  Therefore, Minder contends, the trial court correctly dismissed Ellis's complaint for improper venue.

We now consider the law on venue in a transitory action.  Venue "relates to the convenience of litigants." *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168; 60 S. Ct. 153, 154 (1939).  Venue rules "reflect equity or expediency in resolving disparate interests of parties to a lawsuit in the place of trial." *Burlington N.R.R. Co. v. Ford*, 504 U.S. 648, 651; 112 S. Ct. 2184, 2186 (1992).  The rules recognize that "[t]he forum preferable to one party may be undesirable to another." *Id.*

In *Nickell, Inc. v. Psillas*, the Court took an extended "saunter down venue lane" and reviewed at some length the cases interpreting and applying Tennessee's venue statute on transitory civil actions, Tenn. Code Ann. § 20-4-101(a). *Nickell, Inc. v. Psillas*, No. M2004-02975-COA-R3-CV, 2006 WL 1865018, at *9 (Tenn. Ct. App. June 30, 2006).  It reviewed the finding in *Insituform* that venue was proper in Shelby County for an action to recover payments due under a sublicense agreement, including payment for materials and equipment, as well as an unspecified amount in royalties.  *Id.* at *3-4 (citing *Insituform*, 695 S.W.2d at 199-200).  The *Nickell* Court noted that the contract in *Insituform* specified that the payments were to be made to the plaintiff's office in Shelby County.  *Id.* at *3.  Under these facts, the Court in *Insituform* found venue proper in Shelby County.  *Id.* at *4 (citing *Insituform*, 695 S.W.2d at 200-01).

The *Nickell* Court noted that later Tennessee decisions distinguished *Insituform* and limited it to its facts.  *Id.* at *5-8 (reviewing *Resource Company, Inc. v. Bristol Hosp.*, No. 01-A-01-9412-CH-00569, 1995 WL 422468 (Tenn. Ct. App. July 19, 1995); *Jonesboro Drywall & Paster Co. v. Kirby*, No. 03A01-9508-CH-00276, 1995 WL 697901 (Tenn. Ct. App. Nov. 28, 1995); *TPC Facility Delivery Group v. Lindsey*, No. M2002-01909-COA-R3-CV, 2004 WL 193051 (Tenn. Ct. App. Jan. 30, 2004)).  *Nickell* said that these cases described the claim in *Insituform* as being "for a liquidated debt" and "decline[d] to adopt a rule saying as a matter of law that payment in all actions based on contract is due at the creditor's residence."  *Id.* at *6-8 (quoting *Resource Company*, 1995 WL 422468, at *1-2, and *TPC Facility*, 2004 WL 193051, at *4).  It was also noted that, unlike *Insituform*, in *Resource*, *Jonesboro Drywall*, and *TPC Facility*, "[f]ailure to make a payment was not the breach – failure to perform was the breach, and damages were requested as a result." *Id.* at *7.  Thus, *Insituform* was found controlling in *Resource*, *Jonesboro Drywall*, and *TPC Facility*.

The *Nickell* Court noted that *Insituform* was followed in *Tinker-Watkins Sand and Gravel, Inc. v. Parsons*, No. W2003-02048-COA-R3-CV, 2004 WL 689880 (Tenn. Ct. App. Mar.

31, 2004).  *Nickell*, 2006 WL 1865018, at *9.  The *Nickell* Court said that *Tinker-Watkins* "rejected the notion that *Insituform* applicability rested in large part on whether the contract provided payment was due and payable at the creditor's business."  *Id.* at *9 (citing *Tinker-Watkins*, 2004 WL 689880, at *1).  *Tinker-Watkins* followed *Insituform* because "the gravamen of [the plaintiff's] action [was] the collection of a debt in a specific amount" and thus found that the cause of action arose out of the plaintiff's county.  *Nickell*, 2006 WL 1865018, at *9 (quoting *Tinker-Watkins*, 2004 WL 689880, at *3).

Synthesizing the cases it reviewed, the *Nickell* Court observed:

> We do not believe, however, that whether a plaintiff asks for a specific amount in its complaint governs venue.  The question under these cases is where the cause of action arises.  While the fact that a specific amount is requested may be indicative of an action to collect a debt, it is not determinative of venue.

*Nickell*, 2006 WL 1865018, at *9.  In *Nickell*, the Court found that venue was not proper in the plaintiff's county because the plaintiff's claims were "much more complicated than collection of the simple indebtedness" alleged in the complaint, and because the payments at issue were not to be made in the plaintiff's county of residence.  *Id.* at *9-10.

We agree with the analysis of the venue caselaw in *Nickell*.  We now consider the parties' arguments in light of the caselaw.

Minder argues vigorously that the complaint in this case is not an action to collect a debt primarily because it seeks an "unspecified and unliquidated alleged amount" of damages that is "subject to proof."  We think that it goes too far to characterize the Estate's damages as "unliquidated" and "unspecified."  In general, liquidated damages are damages that are "reasonably ascertainable at time of breach, measurable by fixed or established external standard."  *Deluxe Black's Law Dictionary* 391 (6th ed. 1990).  In contrast, unliquidated damages "cannot be fixed by a mere mathematical calculation from ascertained data in the case."  *Id.* at 393.  In the context of prejudgment interest, generally not permitted on an award of unliquidated damages, Dobbs' Hornbook on remedies observes:

> When the plaintiff is entitled to recover a sum that is not liquidated but that can be ascertained by application of arithmetic or by the application of "accepted standards of valuation," without reliance on opinion or discretion, the case is treated like a liquidated damages case. . . .  The most obvious case of ascertainable damages is one in which arithmetic applied to the facts will produce the right figure. . . .

> Courts usually say that damages may be ascertainable . . . even when the parties dispute the underlying liability or the facts on which damages are based. The fact that the defendant raises a defense, counterclaim or set-off, does not prevent ascertainment of damages under this rule. . . . It is the character of that original claim that counts, not the vicissitudes of the law-suit.

Dan B. Dobbs, *Law of Remedies*, Damages - Equity - Restitution § 3.6(1) (2d ed. 1993).

Here, the Estate asserts that Ellis was due 100% of the songwriter royalties, rather than the reduced percentages Minder was paying, before Minder stopped paying altogether. Although the amount of royalties due on the songs is a rolling total that continues to accrue, it is susceptible of being made certain at any given point in time by application of arithmetic to the facts,[11] without opinion or discretion, and thus is ascertainable, not unliquidated damages. *See, e.g., H & S Production, Inc. v. Dorchester Minerals, LP*, No. 05-08-00953-CV, 2009 WL 2478089, at *5 (Tex. Ct. App. Aug. 14, 2009) (claim for oil and gas royalties not a claim for unliquidated damages).

Moreover, we agree with the observation in *Nickell* that whether the plaintiff asks for a specific amount of damages in the complaint does not govern venue. *See Nickell*, 2006 WL 1865018, at *9. Rather, it is indicative of whether the lawsuit is an action to collect a debt, and thus where the cause of action arises. *Id.*

In the case at bar, it is undisputed that Ellis authored the songs at issue and consequently Minder, as the assignee of the copyrights on the songs, was obliged to pay some royalties to Ellis. The primary issue is whether Ellis was the sole author of the songs, and thus whether he was due 100% of the royalties. Thus, the fact that Minder has an obligation to pay royalties is not disputed, only the amount it was required to pay. Ellis was not required to render any performance in order to receive the royalty payments, since his authorship of the songs entitled him to the royalties. As between Ellis and Minder, the only performance at issue was Minder's payment of the royalties, and the only alleged breach was Minder's failure to pay the correct amount of royalties. These facts are akin to the facts presented in *Insituform* and *Tinker-Watkins,* and indicate that the gravamen of Ellis's complaint is for the collection of a debt.

In the alternative, Minder argues that the "focal point" of the contract at issue, the 1983 settlement agreement, was in California, because the agreement "was entered into in

---

[11]Calculating the royalties may involve federal copyright law.

California." (Minder brief at 12.) We examine whether, as Minder asserts, the focal point of the contract the Estate seeks to enforce is in California.

As background, the 1980 assignment agreement, in which Ellis assigned the copyright on one song to Simmons, was executed in California. The 1980 agreement is pertinent, because the document acknowledges that Ellis was the sole composer of that single song. It does not appear, however, to be the contract that the Estate seeks to enforce in this lawsuit. After the 1980 agreement, Ellis and Simmons engaged in litigation in California that was resolved by the 1983 settlement agreement cited by Minder. In the 1983 settlement agreement, Ellis assigns the copyright to all three songs at issue to an entity owned by Simmons. Although the subsequent assignment to Minder is not in the record, presumably it emanates from the 1983 settlement agreement.

Although Minder asserts in its brief that the 1983 agreement was executed in California, there is no evidence in the record to this effect. To be sure, the 1983 letter agreement is in the form of a letter written by one California lawyer, on his California letterhead, to another California lawyer. The record, however, simply does not show where the 1983 agreement was executed by the principals, namely, Ellis and Simmons. Therefore, while the 1983 agreement resolved California litigation, the record does not reveal the place of its execution.

Moreover, the right at issue, arising out of the 1983 agreement, is Ellis's right to receive royalties from the entity to which the song copyrights were assigned. The record indicates clearly that Ellis lived in Shelby County. Unlike the contract in *Insituform*, the 1983 agreement does not specify that royalties are to be paid to the plaintiff in his county of residence. However, unlike the facts in *Nickell*, in the case at bar, there is no indication in the record that Ellis's royalty payments were made anywhere other than his county of residence. *Nickell*, 2006 WL 1865018, at *3, 10. Under all of these circumstances, we cannot agree with Minder's assertion that the "focal point" was California, rather than Shelby County, Tennessee.

We note that the record in this case is not fully developed,[12] and the question is close based on the record with which we are presented. However, from our review, we must respectfully disagree with the trial court's conclusion that Ellis's cause of action did not arise in Shelby County, Tennessee. Therefore, we must reverse the trial court's grant of Minder's motion to dismiss based on improper venue.

---

[12]The trial court found that the Estate's claim for damages was "subject to proof," but the record does not include a transcript of the hearing, and we do not know the proof that the attorneys may have described to the trial court. The parties do not describe the alleged proof in their appellate briefs.

## CONCLUSION

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed against Appellee Minder Music Limited, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE